UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

   - against -

RICARDO ORTIZ,

               Defendant.

------------------------------------X

10 Cr. 815-01 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

On March 10, 2011, Ricardo Ortiz, ("Ortiz" or "Defendant") pleaded guilty to one count of conspiracy to commit Hobbs Act robbery and one count of Hobbs Act robbery, both counts in violation of 18 U.S.C. § 1951. For the reasons set forth below, Ortiz will be sentenced to 108 months' imprisonment to be followed by three years' supervised release. Ortiz will also be required to pay a special assessment of $200 and forfeit to the United States all property, real and personal, involved in the offense or traceable to such property.

**Prior Proceedings**

On September 14, 2010, Indictment 10 CR 815 (RWS) was

1

filed in the Southern District of New York. Count 1 charges that from the summer of 2008, up to and including October 2008, in the Southern District of New York and elsewhere, Ricardo Ortiz conspired and agreed with others to commit robberies of individuals believed to be in possession of narcotics and/or narcotics proceeds. Count 2 charges that, on October 2, 2008, in the Southern District of New York, Ricardo Ortiz robbed people in an apartment located in the Bronx, New York, who Ortiz believed possessed narcotics and/or narcotics proceeds. Both counts are in violation of 18 U.S.C. § 1951.

On March 10, 2011, Ortiz appeared in the Southern District of New York and allocuted to the above counts in accordance with a plea agreement.

Sentencing is scheduled for October 18, 2011.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through

consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

　(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

　(B) to afford adequate deterrence to criminal conduct;

　(C) to protect the public from further crimes of the defendant; and

　(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

　(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Ortiz's personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The

specific facts of the underlying conduct are adopted as set forth in that report.

On October 2, 2008, in the late evening, an individual ("Victim-1") going from a hair salon in Bronx, New York, ("the Hair Salon") to an apartment in Bronx, New York (the "Apartment"), was approached by three males, one of whom was displaying a police badge. The men placed Victim-1 in handcuffs, and put him in a black Dodge Durango, which they then drove around the Bronx and Manhattan. The men took Victim-1's wallet, cell phone, keys, and money. After a few minutes, the men stopped the Durango, and two of the men exited the Durango and entered a silver Audi, which was parked behind the Durango. At the same time, one man exited the Audi and entered the Durango. The two men in the Durango began driving Victim-1 around again. After a period of time, the men in the Durango dropped Victim-1 off in the vicinity of the 34th precinct.

At approximately the same time that Victim-1 was being driven around the Bronx and Manhattan, an individual ("Victim-2") was exiting the Apartment when Victim-2 was approached by three males claiming to be police officers. The men told Victim-2 that they had a search warrant for the Apartment, and

led Victim-2 back into the Apartment. When Victim-2 realized the men were not police officers, he tried to resist and was restrained by the men and tied up with electrical cord. The men asked Victim-2 where the money was kept.

Approximately 30 minutes after Victim-2 was restrained in the Apartment, another individual ("Victim-3"), returned to the Apartment from the Hair Salon with a friend ("Victim-4"). Victim-3 and Victim-4 were pulled inside by three men and bound with electrical cords. The men asked them where the money and drugs were kept. When the men found two safes, they asked Victim-3 to open the safes. Victim-3 gave the men the combinations to one safe, and the men opened that safe and took, among other things, jewelry and money. The men took the second safe with them, which also contained money and jewelry. Victim-3 observed firearms displayed on the persons of some or all participants in the robbery.

Soon after the robbery, Victim-3 found a pair of sunglasses in the Apartment that Victim-3 did not believe belonged to any of the Apartment's occupants, and believed might belong to the robbers. NYPD officers submitted the sunglasses to the NYPD laboratory for fingerprint analysis. The report of

the analysis indicates that fingerprints belonging to an individual ("CC-1") were recovered on the sunglasses. Victim-3 was shown a photographic array of six images, including CC-1's photograph, and Victim-3 identified CC-1 as one of the individuals who robbed the Apartment.

Law enforcement officers determined that a second individual ("CC-2") had been arrested with CC-1 on a prior occasion. Victim-3 was shown a photo array containing a photo of CC-2. Ultimately, Victim-3 identified CC-2 as someone Victim-3 had observed on a day right before the robbery outside the Hair Salon, apparently talking on a payphone for a long period of time, which had aroused Victim-3's suspicion.

Law enforcement officers have determined through a review of motor vehicle records that CC-2 had registered to himself a silver Audi on the date when the robbery described above and the abduction involving the silver Audi occurred. Based on a tip concerning the participants in the robbery described in this narrative, the case agent obtained several prior arrest photographs, a criminal history report, and other information pertaining to Ortiz.

Based on a review of criminal history records for Ortiz, it was discovered that Ortiz had been arrested on January 2, 2003, and that the location of the arrest was 370 Fort Washington Avenue, New York, NY. The case agent also determined that CC-2 resided at 370 Fort Washington Avenue because, among other reasons, CC-2 was recently arrested at an apartment at that location and identified a bedroom in an apartment at 370 Fort Washington Avenue as bedroom.

A review of video footage and stills from video footage taken from cameras at the Apartment on the date of the robbery described above shows men entering and exiting the Apartment with suitcases several times on the date of the robbery described above. On multiple occasions, two men, including a man with a shaved head, are shown entering and exiting the Apartment. Subsequent comparisons of the suspects, shown in multiple videos recording activities in the entrance, hallway and elevators which lead to the Apartment indicate that Ortiz was one of the robbers described above. On February 4, 2010, Victim-3 was shown a photographic array of six images, including a photograph of Ortiz. Victim-3 then identified Ortiz as one of the individuals who robbed the Apartment.

On May 19, 2010, Ortiz was arrested. Subsequent investigation by the Government revealed that Ortiz and his co-conspirators took drugs, jewelry and other personal property, and the value of such items exceeded $10,000.

**The Relevant Statutory Provisions**

Pursuant to 18 U.S.C. § 1951, the maximum term of imprisonment is 20 years.

If a sentence of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years per count, pursuant to 18 U.S.C. § 3583(b)(2).

Defendant is eligible for probation of not less than one or more than five years per count, pursuant to 18 U.S.C. § 3561(c)(1).

The maximum fine that may be imposed is $250,000 per count, pursuant to 18 U.S.C. § 3571. A special assessment of $100 per count is mandatory, for a total of $200, pursuant to 18 U.S.C. § 3013.

As a result of committing the offenses alleged in Counts 1 and 2 of the Indictment, Defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 1963(a)(1), (a)(2), and (a)(3), all property real and personal, involved in the offense or traceable to such property.

**The Guidelines**

The November 1, 2010 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to § 1B1.11(a). Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment are as follows:

The guideline for the violation of 18 U.S.C. § 1951 is found in § 2B3.1. According to § 2B3.1(a), the base offense level for the instant offense is 20. Pursuant to § 2B3.1(b)(2)(D), because a dangerous weapon was used to strike a victim, the offense level is increased by four levels. Pursuant to § 2B3.1(b)(3), because a victim sustained bodily injury, the offense level is increased by two levels. Pursuant to § 2B3.1(b)(4)(A), because a person was abducted to facilitate

commission of the offense, the offense level is increased by four levels. Pursuant to § 2B3.1(b)(6), because the taking of a controlled substance was an object of the offense, the offense level is increased by one level. Pursuant to § 2B3.1(b)(7), because the value of the property taken in the robbery exceeded $10,000, the offense level is increased by one level. Therefore, the base offense level is 32.

Based on his plea allocution, Defendant has shown recognition of his responsibility for the offense. Pursuant to § 3E1.1(a), the offense is reduced two levels. Furthermore, an additional one-level reduction is warranted, pursuant to § 3E1.1(b), because Defendant gave timely notice of his intention to enter a plea of guilty for an offense with a base level of 16 or greater, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Accordingly, the applicable offense level is 29.

On September 10, 2002, Ortiz was found to be in possession of marijuana and drug paraphernalia and charged with Criminal Possession of Marijuana in the Fourth Degree. On

11

September 16, 2002, Ortiz was sentenced in Bronx County Criminal Court to time served. Pursuant to §§ 4A1.1(c) and 4A1.2(e)(2), this conviction warrants one criminal history point.

On January 2, 2003, Ortiz was observed inside a New York City Housing Authority location without permission or authority and was found to be in possession of a controlled substance. Ortiz was charged with Criminal Possession of a Controlled Substance in the Seventh Degree and, on January 3, 2003 was sentenced in New York County Criminal Court to five days' community service and a six month license suspension. Pursuant to §§ 4A1.1(c) and 4A1.2(e)(2), this conviction warrants one criminal history point.

On February 19, 2003, Ortiz was observed smoking marijuana in public. He was charged with Criminal Possession of Marijuana in the Fifth Degree and, on February 20, 2003, was sentenced in New York County Criminal Court to five days' community service and a six month license suspension. Pursuant to §§ 4A1.1(c) and 4A1.2(e)(2), this conviction warrants one criminal history point.

On April 15, 2003, Ortiz was observed smoking

12

marijuana in public. Ortiz was charged with Criminal Possession of Marijuana in the Fifth Degree and, on April 16, 2003, was sentenced in New York County Criminal Court to a sentence of time served plus a six month license suspension. Pursuant to §§ 4A1.1(c) and 4A1.2(e)(2), this conviction warrants one criminal history point.

On September 28, 2004, Ortiz sold a quantity of a controlled substance to an undercover police officer. Defendant was later found to be in possession of marijuana and charged with Criminal Sale of a Controlled Substance in the Fourth Degree. On September 8, 2005, Ortiz was sentenced in New York County Supreme Court to six months in custody with a six month license suspension. Pursuant to §§ 4A1.1(b) and 4A1.2(e)(2), this conviction warrants two criminal history points.

The criminal convictions above result in a subtotal criminal history score of six, which according to the table at Chapter 5, Part A of the Guidelines, establishes a Criminal History Category of III.

Based on a total offense level of 29 and a Criminal History Category of III, the Guidelines range for imprisonment

is 108 to 135 months.

The Guidelines range for a term of supervised release is two to three years, pursuant to § 5D1.2(a). Multiple terms of supervised release run concurrently, pursuant to 18 U.S.C. § 3624(e).

Because the applicable Guidelines range is in Zone D of the Sentencing Table, Defendant is not eligible for probation, pursuant to § 5B1.1, application note #2.

The fine range for the instant offense is $15,000 to $150,000, pursuant to § 5E1.2(c)(1) and (2). Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,157.88 to be used for imprisonment, a monthly cost of $311.94 for supervision, and a monthly cost of $1,990.13 for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. Upon consideration of all of the relevant factors, it is concluded that the imposition of a Guideline sentence is warranted.

**The Sentence**

For the instant offense, Ortiz will be sentenced to 108 months' imprisonment and three years' supervised release.

Ortiz is directed to report to the nearest United States Probation Office within 72 hours of release to commence his term of supervised release. It is recommended that Ortiz be supervised by the district of his residence.

As mandatory conditions of his supervised release, Ortiz shall:

(1) not commit another federal, state, or local crime;

(2) (2) not illegally possess a controlled substance;

(3) not possess a firearm or destructive device; and

(4) cooperate in the collection of DNA as directed by the probation officer.

The mandatory drug testing condition is suspended due to the imposition of a special condition requiring drug treatment and testing.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) Defendant will participate in a program approved by the United States Probation Office, which program may include testing to determine whether Defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer. Defendant will be required to contribute to the costs of services

>           rendered (co-payment), in an amount determined by
>           the Probation Officer, based on ability to pay or
>           availability of third-party payment.
>     (2)   Defendant shall cooperate with all inquiries and
>           directives of Immigration and Customs Enforcement
>           and comply with this country's immigration laws.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

A special assessment of $200, payable to the United States, is mandatory and shall be due immediately.

As a result of committing the violations of 18 U.S.C. § 1951, Defendant shall forfeit to the United States all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses, including but not limited to a sum in United States currency representing the amount of proceeds obtained as a result of the offenses. If any of the forfeitable property described above, as a result of any act or omission of Defendant:

17

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

the United States may seek forfeiture of any other property of Defendant up to the value of the forfeitable property.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for October 18, 2011.

It is so ordered.

**New York, NY**
**October 3, 2011**

_____
ROBERT W. SWEET
U.S.D.J.